FILED

97 NOV -7  AM 8: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY SIEGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 97-PT-0578-E |
| | ) | |
| TALLADEGA COUNTY SCHOOL BOARD, et al., | ) | ENTERED |
| | ) | |
| Defendants. | ) | NOV 7 - 1997 |

**Memorandum Opinion**

This cause comes on to be heard on a motion for summary judgment filed by the defendants, Talladega County School Board ("Board"), Rudy Nelson, Lance D. Grisset, John Stamps and Jimmy Hays, on September 15, 1997. In their motion the defendants dispute the claims of the plaintiff, Tanny Sieger ("Sieger"), that she suffered sexual harassment and was retaliated against for filing the instant lawsuit in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.[1]

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of

---

[1] The plaintiff, in her complaint, states other claims against the defendants, including a § 1983 claim for violation of the Equal Protection clause against all defendants and claims of intentional infliction of emotional distress, civil assault and outrage against Rudy Nelson. The defendants do not address these issues. With respect to the plaintiff's Title VII claim, only employers may be sued for violations of the statute. Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Therefore, the plaintiff's Title VII claims against all non-Board members will be DISMISSED, with prejudice. The claims against the Board members are likely the same as the claims against the Board in the absence of evidence of actual participation by a Board member.

material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

## Facts

The facts in this case are stated favorably to the plaintiff. They may or may not be the actual facts. The plaintiff was hired as a clerical aid in the Talladega County High School on September 25, 1995. After she began her employment, the plaintiff began to receive the undesired attention of Rudy Nelson ("Nelson"), a teacher at the school. Nelson would continually come to the office in which the plaintiff worked and attempt to engage her in conversation. He would touch her on the shoulder, compliment her on her appearance and ask her whether she (and her husband) had a good night. The plaintiff asked Nelson to stop touching her. Purportedly, he continued to do so. At some point Nelson asked the plaintiff out on a date. She refused, reminding Nelson that she was married. To this point, the plaintiff had not complained to any member of the school staff.

The impositions of Nelson on the plaintiff increased on September 27, 1995, with his asking her to read some "stories" that he had written her. The stories were, in fact, poorly written and tawdry vignettes, featuring characters whose sole motivation is carnal variety.[2] The plaintiff was offended by the stories, due to their pornographic content and the clumsy prose in which they were written. The plaintiff alleges that, until October 11, 1995, she was frightened to say anything to anyone at the school.

On October 10, 1995, the plaintiff was approached by Nelson, who told her that his wife would be going out of town for the weekend. Nelson then asked the plaintiff if she would be interested in meeting him somewhere. She declined, stating that she was committed to her marriage, even if Nelson was not. The next day, Nelson inquired whether the plaintiff had read his stories. The plaintiff replied that she had not. Nelson insisted that she do so. The stories, he allegedly said, made him think of her.

In response to Nelson's insistence that she read the stories, Sieger presented Nelson's pedestrian romances to Ms. Kay Waites, the high school's secretary and resident literary expert. Ms. Waites, having assessed their gawkish and profane character, passed the stories to Mr. John Stamps, the high school principal.

Mr. Stamps took the stories to Dr. Ed Hall, the assistant superintendent of the Board. After an investigation, Nelson was reprimanded and told to avoid contact with the plaintiff. The reprimand apparently did not deter Nelson. After the reprimand, Nelson began to give the plaintiff "dirty looks," making her feel uncomfortable. Because of the discomfort that Nelson continued to inflict on the plaintiff, she requested a transfer to a different school. She was accommodated by a transfer to Lincoln Elementary located twenty miles further from her home than Talladega County High School.

---

[2] The court has experienced the distinct displeasure of reading some of these stories. Although tempted to place numerous excerpts of the stories in the opinion, the court has deigned, in the interest of propriety as opposed to comedy, to reproduce only this portion of a story entitled "Favors Owed and Collected":
> Quickly they helped each other lose some outer garments until she was had only her panties left and he his boxer shorts on. She remained on her stomach. But he was now sitting on the back of her thighs. He proceeded to devote both hands to exploring her glistening skin. Occasionally his fingers slip past her sides and rake different parts of her stomach, ribs and breasts. Each time her reaction was a ripple or a sigh. as he leaned forward to knead her breasts, she could feel his surging manhood press pulsating against her soft cheeks. Suddenly she felt a slight tug as his fingers entwined with her panties. As he rolled them down, she thought that she could feel the touch of his lips and the roll of his tongue along her lower back and across her goosebumped buttocks.

At Lincoln Elementary, the plaintiff consistently received above average evaluations. On March 11, 1997, notice of the plaintiff's lawsuit was received by the Board. On her April 15, 1997 evaluation, the plaintiff's performance was rated as mediocre. On April 30, 1997, the plaintiff was terminated. According to the plaintiff, she was told by Ralph Gaines, attorney for the Board that if she dropped her suit against the Board, she would be rehired.

The defendants claim that prior to his actions towards the plaintiff, no allegations of harassment by Nelson had been reported in the school. The plaintiff contends that Mr. Stamps knew of Nelson's literary attempts before Nelson selected the plaintiff as a reader.

## Contentions & Analysis

SEXUAL HARASSMENT.

The plaintiff contends that Nelson's behavior towards her constitutes sexual harassment.

> Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1994). Sexual harassment is a form of sexual discrimination within the meaning of Title VII. See, e.g., Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65-67 [] (1986). Two types of sexual harassment are prohibited by Title VII: quid pro quo harassment and hostile work environment harassment. See Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1315 (11th Cir.1989). The district court held, and appellants do not dispute, that there was no evidence in the record of quid pro quo sexual harassment. The appellants' claims on appeal are thus confined to allegations of hostile work environment sexual harassment.
> "Hostile environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" Id. at 1315 (quoting Vinson, 477 U.S. at 65, 106 S.Ct. at 2405). Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 [] (1993) (quoting Vinson, 477 U.S. at 65, 67 []). The harassing conduct must create both an objectively hostile or abusive environment--one "that a reasonable person would find hostile or abusive" — and a subjectively hostile or abusive environment--one that "the victim . . . subjectively perceive[s] . . . to be abusive." Id. at 21-22 []

Fleming v. Boeing Company, 120 F.3d 242, 244-45 (11th Cir. 1997). The plaintiff's claim is that she was subjected to a hostile work environment through the overtures of Nelson. The defendants' first argument against the plaintiff's hostile work environment claim is that the attentions of Nelson did not constitute sexual harassment because they were not so "pervasive or persistent" that a

-4-

reasonable person would find them hostile or abusive. The stories, state the defendants, were not authored with Sieger in mind, and therefore do not constitute sexual overtures directed at her. Nor did the looks, touches and requests for a date by Nelson rise to a pervasive level, contends the defendants. The plaintiff argues that even if Nelson was not thinking of the plaintiff when he wrote his stories, by handing the sexually dominated material to the plaintiff, he engaged in harassment.

The court agrees with the plaintiff that the material allegedly presented to her raises a genuine issue of fact that an objectively hostile environment exists. Recently, the Seventh Circuit Court of Appeals stated:

> The need for proof that the plaintiff was targeted for harassment because of his gender is evident in cases where the harassment is not explicitly sexual (the type of harassment the EEOC cites in its guideline [], but is gender-based nevertheless. Harassment can obviously take many forms, and although mere profanity, "shoptalk," and other manifestations of "general unpleasantness" in the workplace typically will not by themselves support a Title VII claim (Carr, 32 F.3d at 1009, 1010), harassment lacking in sexual overtones may nonetheless support a claim for sex discrimination when it is visited upon workers of one gender but not the other. This is typically referred to as "gender harassment." See 3 Lex K. Larson, EMPLOYMENT DISCRIMINATION § 46.01[3] (2d ed. 1995). Thus, "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII" (McKinney v. Dole, 765 F.2d 1129, 1138 (D.C. Cir. 1985) (emphasis supplied); see also Carson, 82 F.3d at 158-59); and hostile environment claims are "in no way limited ... to intimidation or ridicule of an explicitly sexual nature" (Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3$^d$ Cir. 1990)). See also Carr, 32 F.3d at 1010; Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993); Hall v. Gus Construction Co., 842 F.2d 1010, 1014 (8th Cir. 1988); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987); Bell v. Crackin Good Bakers, Inc., 777 F.2d 1497, 1503 (11th Cir. 1985); Curde v. Xytel Corp., 912 F. Supp. 335, 340 (N.D. Ill.1995). A woman employed in a male-dominated workplace with an antipathy toward female workers might find her tools constantly missing, her locker broken into, and her work sabotaged, for example, as part of a campaign of harassment motivated by her gender yet devoid of sexual innuendo and contact. In such a case, the plaintiff necessarily must show differential treatment of men and women, or an animus to her own gender, in view of the fact that the harassment itself does not suggest a nexus to the plaintiff's gender. See Spain v. Gallegos, 26 F.3d 439, 447, 449 (3$^d$ Cir. 1994); Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1164 (7th Cir. 1994); Cline v. General Elec. Credit Auto Lease, Inc., 748 F. Supp. 650, 654-55 (N.D. Ill. 1990); Carrie N. Baker, Comment, Proposed Title IX Guidelines on Sex-Based Harassment of Students, 43 EMORY L. J. 271, 316-17 (1994).
> 
>   It is not clear why such proof is needed when the harassment has explicit sexual overtones, however. Arguably, the content of that harassment in and of itself demonstrates the nexus to the plaintiff's gender that Title VII requires. Thus, the Third Circuit has remarked that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit,

-5-

and thus should be recognized as a matter of course." Andrews, 895 F.2d at 1482 n. 3; see also Nichols v. Frank, 42 F.3d 503, 511 (9th Cir. 1994) (opinion of Reinhardt, J.) ("[S]exual harassment is ordinarily based on sex. What else could it be based on?") (emphasis in original); Jones v. Flagship Int'l, 793 F.2d 714, 720 n. 5 (5th Cir. 1986) ("Except in the exceedingly atypical case of a bisexual supervisor, it should be clear that sexual harassment is discrimination based on sex."), cert. denied, 479 U.S. 1065 [] (1987) (quoting Henson v. City of Dundee, supra, 682 F.2d at 905 n. 11); Jones v. Aspin, 64 Empl. Prac. Dec. para. 43,005, 1994 WL 88988, at *1 n. 1 (E.D. Pa. Mar. 1, 1994); Frey v. Pennsylvania Airlines, 859 F. Supp. 137, 144 (M.D. Pa.1992); Cline, 748 F. Supp. at 654. And as the district court observed in Cline:

> Sexual harassment cases differ because the discriminatory nature of the charged conduct speaks for itself. The main issue in sexual harassment cases is not whether the employer harassed the employee on the basis of her gender, but whether the claimed harassment affected the terms, conditions, or privileges of the plaintiff's employment, as Title VII uses those words.

Id.; accord Katz v. Dole, 709 F.2d 251, 255 (4th Cir. 1983) ("In cases involving claims of sexual harassment, ... the sexual advance or insult almost always will represent 'an intentional assault on an individual's innermost privacy.' Therefore, once the plaintiff in such a case proves that harassment took place, the most difficult legal question typically will concern the responsibility of the employer for the harassment.") (quoting Bundy v. Jackson, supra, 641 F.2d at 945); see also Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996) (reasonable jury could find that intent to discriminate is implicit in use of racial code words) (citing, inter alia, Futrell v. J.I. Case, 38 F.3d 342, 347 (7th Cir. 1994) (age bias could be inferred from remarks that company needed "sharp young people" and that plaintiff was not a "forward enough thinker")); Vore, 32 F.3d at 1164 (racially hostile remarks, graffiti, and other conduct are indicative of "obvious" animus). This view is consistent with the EEOC's guideline, which does not focus on whether the harasser singled out the victim on the basis of her gender, but instead provides simply that "verbal or physical conduct of a sexual nature constitute[s] sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." 29 C.F.R. § 1604.11(a) (quoted in full at n. 3, supra).

Doe v. City of Belleville, Illinois, 119 F.3d 563, 575-76 (7th Cir, 1997) (emphasis added). The stories of Nelson could reasonably be considered pornographic in nature. The presentation of such material to the plaintiff with the alleged statement of Nelson that the offered "literature" made him think of the plaintiff is sufficient to raise the inference of an objectively and subjectively hostile work environment.

At the same time, this court is careful to note that an exchange of literature containing some sexual content among employees of the opposite sex will not commonly give rise to a sexual harassment claim. Distribution of Plato's Laches or Joyce's Ulysses to a co-worker will not be objectively abusive. Further, works of fiction (and fact) which bear on matters of sex are often distributed to students by their teachers as part of the students' classwork. Provision of these materials to students will not, except in the most extreme of circumstances, give rise to any

harassment claim. Even works of fiction written by one employee and distributed to another that contain references to sexual relations generally should not create a harassment claim. Only when the material is so overwhelmingly sexual in content that its clear and primary purpose is to evoke erotic thoughts on the part of the reader can that material be considered objectively abusive with regard to sex. A reasonable trier of fact could find the material presented to the plaintiff by Nelson a boorish attempt at erotic prose directed at the plaintiff.

The defendants next argue that even if Nelson has harassed the plaintiff, it is not the case that the Board "knew or should have known of the harassment and failed to take prompt remedial action." Huddleston v. Roger Dean Chevrolet, 845 F.2d 900, 904 (11th Cir. 1988). The defendants allege that no knowledge of Nelson's behavior was known to the plaintiff's superior until she presented the stories of Nelson to Ms. Waites and those stories ultimately to Mr. Stamps on October 11, 1995. When informed of Nelson's behavior, alleges the defendants, an investigation promptly ensued which resulted in reprimand against Nelson.

The plaintiff first responds that the Board did have constructive knowledge of the harassment. According to her, rumors abounded about similar behavior of Nelson towards a teacher at the school, Sheila O'Brien. Further, contends the plaintiff, at the time of the alleged incident, the school had no sexual harassment policy, leaving her and Ms. O'Brien without any recourse against Nelson's behavior. Finally, the plaintiff argues that the warning given to Nelson was an insufficient response to halt the harassment and that the remedy finally provided, after Nelson continued to harass her by giving her unsettling looks, was a transfer to an elementary school twenty miles further away, punishing her rather than Nelson.

> An employer is directly liable for hostile environment sexual harassment if it knew, or reasonably should have known, of the harassment and failed to take prompt remedial actions. Faragher v. City of Boca Raton, 111 F.3d 1530, 1535, 1538 (11th Cir. 1997) (en banc); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir. 1989); Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir.1982).
> A plaintiff can prove that the employer had knowledge of the harassment by showing that she complained to higher management or by showing that the harassment was so pervasive that the employer can be charged with constructive knowledge of the harassment. Faragher, 111 F.3d at 1538; Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900, 904 (11th Cir. 1988). The question of constructive knowledge is an issue of fact. Faragher, 111 F.3d at 1538, Reich v. Department of Conservation and Natural Resources, Alabama, 28 F.3d 1076, 1082 (11th Cir. 1994). Moreover, "a court must evaluate the totality of the circumstances both in determining whether the work environment was abusive and in determining whether the conduct was pervasive enough to put the employer on notice." Faragher, 111 F.3d at 1538. In the instant action, plaintiff initially failed to complain of the

harassment. When she did complain, [the defendant] took immediate action although a dispute exists as to how effective that action was. Therefore, for [the employer] to be liable under Title VII for hostile environment sexual harassment, the alleged harassment must have been so pervasive that [the employer] is deemed to have constructive knowledge of it.

The Supreme Court has provided a non-exclusive set of factors to consider in determining whether an environment is hostile. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23 []. In determining whether harassment is so pervasive as to provide the employer with constructive knowledge, this Court recently held that, "[t]he question of notice to the employer is distinct from the question of the environment's abusiveness." Faragher, 111 F.3d at 1538. However, there may be cases where the same level of pervasiveness supports a finding of both a hostile environment and constructive notice. Id. n. 10. Some factors that this Court has considered in determining whether harassment was so pervasive as to provide constructive notice to an employer are: the remoteness of the location of the harassment as compared to the location of management; whether the harassment occurs intermittently over a long period of time; whether the victims were employed on a part-time or full-time basis; and whether there were only a few, discrete instances of harassment. Id. at 1538.

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646-47 (11th Cir, 1997). In the present case, Nelson was a constant and imposing presence at the plaintiff's desk. Allegedly, the stories made their way to ex-employees, although there is no indication of how the stories were transferred. There are also indications that Nelson had, prior to directing his attention on the plaintiff, approached other women in the school system about possible relationships. Finally, the plaintiff worked in the school office, a location from which Nelson's behavior might have readily been observed by school management. Although the evidence of constructive knowledge is weak, it is likely sufficient for a jury to find that knowledge of Nelson's activities should have existed. See id.

The Eleventh Circuit Court of Appeals has stated that "'"What is appropriate remedial action will necessarily depend on the particular facts of the case — the severity and persistence of the harassment, and the effectiveness of any initial steps."'" Reynolds v. CSX Transportaion, Inc., 115 F.3d 860, 867 (11th Cir. 1997) (quoting Garcia v. Elf Atochem North America, 28 F.3d 446, 451 (5th Cir. 1994) (quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 479 (5th Cir. 1989))). A jury could might reasonably find that the Board's response of a warning to Nelson and its later action of transferring the plaintiff, rather than Nelson, as a reaction to his behavior, were inadequate to meet the alleged harassment.

RETALIATION.

In a retaliation case . . . , the plaintiff must show the following to establish a prima facie

case: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. Hairston, 9 F.3d at 919. Once the plaintiff has established a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Hairston, 9 F.3d at 919. If the defendant proffers legitimate reasons, the presumption of retaliation is rebutted and drops from the case. At the summary judgment stage, the burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action. See Hairston, 9 F.3d at 921 ("The burden to avoid summary judgment is not to show by a preponderance of the evidence that the stated reasons were pretext. Rather, plaintiff's burden . . . is met by introducing evidence that . . . could allow a jury to find . . . that the plaintiff has established pretext, and that the action was taken in retaliation for engaging in the protected activity.").

Raney v. Vinson Guard Service, 120 F.3d 1192, 1196-97 (11th Cir. 1997).

The defendants argue that the plaintiff cannot state a claim of retaliation because the plaintiff was terminated for poor performance. The plaintiff disputes this, contending that, until her April 15, 1997 evaluation, she was given consistently good ratings by her supervisor, Ms. Wright. The plaintiff alleges that in the days before her April 15, 1997, the assistant superintendent of the Board, Donald Duck, spoke with Ms. Wright about the recently filed suit against the Board. After the discussion, the plaintiff received the low evaluation of April 15, 1997 and she was terminated on April 30, 1997. According to the plaintiff, on April 29, 1997, she called Ralph Gaines, the school's attorney to discuss her termination. She alleges that she was told by Gaines that she would be rehired if she dropped her suit against the defendants. Gaines admits that the phone call occurred, but denies that he made any such comment to the plaintiff. While a determination that the defendants' reasons for the plaintiff's termination are to be (or could be) disbelieved does not mandate a judgment for the plaintiff, it certainly allows for it, "in tandem with the plaintiff's prima facie case. . . ." Combs v. Plantation Patterns, 106 F.3d at 1529.

> [A] plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action.

Id. The plaintiff has satisfied her burden, albeit on arguably weak evidence, and can therefore proceed to trial on her retaliation claim.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment will be **DENIED**. The claims may be weak as to the issue of notice to the Board, but some weak cases must proceed to trial.

This __6TH__ day of November 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment will be **DENIED**. The claims may be weak as to the issue of notice to the Board, but some weak cases must proceed to trial.

This __6TH__ day of November 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE